**MIC Gen. Ins. Corp. v Eckart**

2024 NY Slip Op 32661(U)

July 31, 2024

Supreme Court, New York County

Docket Number: Index No. 651028/2022

Judge: Gerald Lebovits

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

**PRESENT:**    **HON. GERALD LEBOVITS**                    **PART**                    **07**

                                                                 *Justice*
--------------------------------------------------------------------------------X

MIC GENERAL INSURANCE CORPORATION,

                                    Plaintiff,

                    - v -

KATHRYN ECKART, GEORGE ECKART, and PATRICIA
PACHECO-SANCHEZ,

                                    Defendants.

--------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 651028/2022 |
| **MOTION SEQ. NO.** | 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 42, 43, 44, 45, 46, 47, 48, 49, 50

were read on this motion to                    VACATE DECISION/ORDER/JUDGMENT               .

*Hagelin Spencer LLC*, Jersey City, NJ (Michael J. Mernin of counsel), for plaintiff.
*Jason C. Altman, P.C.*, Melville, NY (Jason Altman of counsel), for defendant Kathryn Eckart.
*Dell & Dean, PLLC*, Garden City, NY (Antonio Marano of counsel), for defendant Patricia Pacheco-Sanchez.
No appearance for defendant George Eckart.

Gerald Lebovits, J.:

In this action, plaintiff, MIC General Insurance Corp. (MIC), seeks a declaratory judgment that plaintiff need not defend or indemnify defendants, Kathryn Eckart, George Eckart, and Patricia Pacheco-Sanchez, in a lawsuit relating to property owned by Ms. Eckart at 44 Tanners Neck Lane in Westhampton, New York (Tanners Neck Lane). Ms. Eckart has an insurance policy with plaintiff for Tanners Neck Lane.

On motion sequence 001, filed in 2023, plaintiff moved for summary judgment against defendants. The Eckart defendants did not appear for the scheduled argument on that motion. In an oral decision delivered on the record on January 9, 2024, this court granted summary judgment to plaintiff on default and on the merits.

Ms. Eckart now seeks to vacate the summary-judgment order under CPLR 2221 (d) and CPLR 5015 (a) (1) and asks the court then to deny plaintiff's motion for summary judgment.[1] The motion to vacate is granted; and upon vacatur, plaintiff's summary-judgment motion is denied.

-------------------------------

[1] Co-defendants Pacheco-Sanchez and Mr. Eckart, who are separately represented, do not oppose Ms. Eckart's motion to vacate. (NYSCEF #46.)

[* 1]

## BACKGROUND

Ms. Eckart has a homeowners-insurance policy with plaintiff for the Tanners Neck Lane property. (NYSCEF No. 2.) She inherited the property in 2014 from her late father. (NYSCEF No. 35.) Ms. Eckart and Mr. Eckart are married but separated. (*Id.*) Since the separation, Mr. Eckart has lived there while Ms. Eckart lives at 14 Humphrey Street in Westhampton. (*Id.*)

On December 27, 2020, Pacheco-Sanchez had an accident at Tanners Neck Lane. She sued both Ms. Eckart and Mr. Eckart in an action pending in Supreme Court, Suffolk County. (NYSCEF No. 22.)

Ms. Eckart notified plaintiff about the accident by phone on May 18, 2021. Plaintiff then brought this lawsuit seeking a declaratory judgment that it need not defend or indemnify defendants in the pending Suffolk County lawsuit. Plaintiff alleges that it need not provide coverage for defendants. Plaintiff also alleges that Ms. Eckart did not reside at Tanners Neck Lane. Therefore, according to plaintiff, the property is not her "residence premises" and does not qualify as an "insured location." Plaintiff further argues that because Mr. Eckart did not live with his spouse, the named insured, he does not qualify as a resident of the insured's household.

Plaintiff moved for summary judgment. The court scheduled, and then held, argument on the motion virtually on Teams on January 9, 2024. Neither Ms. Eckart, Mr. Eckart, nor their counsel appeared. On the record, the court instructed plaintiff's counsel to call Ms. Eckart and Mr. Eckart's counsel. Ms. Eckart, Mr. Eckart, and their counsel did not answer the call. (NYSCEF No. 40.) Plaintiff orally argued the motion without them.

In an oral decision rendered on the record immediately following argument, this court granted summary judgment on default and on the merits in plaintiff's favor. (*See id.*) The court held that plaintiff's insurance policy uses "residence premises" unambiguously. The court agreed with plaintiff's interpretation that where an insured lives is the "residence premises." The court also held that a spouse who lives separately from the named insured at the location listed on the policy does not qualify as a member of the "household." (*See id.*)

Ms. Eckart now moves under CPLR 5015 (a) (1) and CPLR 2221 (d) to vacate the court's January 9, 2024, decision granting summary judgment and, upon vacatur, to deny plaintiff's motion for summary judgment. The court reconsiders whether the terms "residence premises" and "household" are ambiguous. The court agrees that the order should be vacated and, upon vacatur, agrees that plaintiff's summary-judgment motion should be denied.

## DISCUSSION

### I.    Whether Defendants Meet the Burden for Vacatur under CPLR 5015 (a)

Ms. Eckart moves under CPLR 2221 (d) to reargue the motion and under CPLR 5015 (a) (1) to vacate the judgment. In this circumstance, the proper procedural vehicle to analyze the request for vacatur is not CPLR 2221 (d), but 5015 (a) (1). (*See U.S. Bank, N.A. v Blagman*, 188

2

[* 2]

AD3d 1284, 1285 [2d Dept 2020] [holding that the proper procedure to cure a default in opposing a motion for summary judgment is CPLR 5015 [a] [1]].)

A party moving to vacate under CPLR 5015 (a) (1) must demonstrate a reasonable excuse for the default and a potentially meritorious defense. (*See e.g. John v Arin Bainbridge Realty, Corp.*, 147 AD3d 454, 455 [1st Dept 2017].) Ms. Eckart has an excusable default. Confusion arose over when the oral argument was to be held. Defendants demonstrate that the court at one point tentatively scheduled oral argument for January 31, 2024, not January 9. (NYSCEF No. 44.) Ms. Eckart also has a potentially meritorious defense: whether "reside," "residence premises," and "household" in the policy are ambiguous or broad enough that Ms. Eckart could "reside" at the Tanners Neck Lane property and Mr. Eckart could be a "resident" of the insured's "household."

The motion to vacate the default is granted.

## II.     Whether Plaintiff is Entitled to Summary Judgment on the Merits

Under CPLR 5015 (a), when a court vacates a grant of summary judgment on default against defendant, the court may then consider the merits of plaintiff's summary-judgment motion and grant or deny that motion. (*See Carrillo v New York City Tr. Auth.*, 39 AD3d 296, 297 [1st Dept 2007].) Thus, upon granting defendants' request for vacatur, this court considers again plaintiff's original request for summary judgment.

A party moving for summary judgment "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case." (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985].) If the movant meets this burden, the non-moving party must then establish the existence of material issues of fact. (*See Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986].)

Plaintiff argues that the court should grant summary judgment on two of its causes of action: plaintiff's requests for declarations that (i) the property was not an insured location at the time of the December 27, 2020, incident, and (ii) Mr. Eckart does not have coverage because he is (assertedly) not a resident of the insured's household.[2] Assessing the merits of these arguments requires interpreting the governing contract among the parties—*i.e.*, the insurance policy issued by plaintiff.

---

[2] Plaintiff's motion papers could be read to hint at an additional argument, namely that Ms. Eckart (assertedly) made material misrepresentations when purchasing the policy for Tanners Neck Lane. The court may not, however, consider arguments that plaintiff does not explicitly raise. (*See Misicki v Caradonna*, 12 NY3d 511, 519 [2009].) Plaintiff also argues that any claim for coverage for a rental property excludes the property from being an "insured location." This argument is irrelevant. Defendants do not claim that the property was used as a rental.

3

### A. Interpreting the Policy

Courts take a multi-step approach to interpreting a contract claimed to be ambiguous. (*See Century Indemnity v Brooklyn Union Gas*, 2022 NY Slip Op 50388 [U], *7-8 [Sup Ct, NY County 2022].) The court (1) determines whether there is indeed an ambiguity. If an ambiguity exists, then the court (2) looks at whether the parties submitted extrinsic evidence. If the parties do submit extrinsic evidence and the evidence conflicts, then the factual issue should be resolved at trial. If the parties do not submit evidence or it is superfluous, then (3) the court may decide the issue as a matter of law. In the case of an insurance company and a policyholder, a court (4) ordinarily applies the doctrine of contra proferentem and resolves the ambiguity against the insurer.[3] (*Id.*; *see State v Home Indem. Co.*, 66 NY2d 669, 671 [1985].)

### 1. Meaning of Reside/Residence Premises

The court concludes that "residence premises," as used in the policy in this case, is ambiguous. The policy relies on an undefined term, "reside," to define "residence premises." (*See* NYSCEF No. 30 at ¶ 30.) In *Dean v Tower Ins. Co. of New York*, the Court determined that when a policy fails to define "reside," then "residence premises" is ambiguous. (*See* 19 NY3d 704, 708 [2012].) "Reside" is not necessarily limited to "live at as a primary residence," as plaintiff contends. For insurance purposes, for example, a person can have more than one residence. (*See Matter of Allstate Ins. Co. [Rapp],* 7 AD3d 302, 303 [1st Dept 2004].) Thus, "reside" may reasonably be understood as also including "use as a secondary residence" or, indeed, merely "stay at from time to time." Given the policy's lack of specificity about *how* premises must be used to qualify as "residence premises," this term is ambiguous.

Neither plaintiff nor defendants offer extrinsic evidence about the scope of "reside" and "residence premises" that might clarify the meaning of the term. As a result, this court must resolve this ambiguity itself. Applying contra proferentem, the court concludes that "reside" and "residence premises" must be afforded a broader meaning than "live at as a primary residence," as plaintiff would have it.

### 2. Meaning of Same Household

The policy also provides that "in this policy, 'you' and 'your' refer to the 'named insured' shown in the Declarations and the spouse if a resident of the same household." (NYSCEF No. 19.) The policy does not define "same household." This term, too, is ambiguous. Plaintiff suggests that it should be limited to spouses living together full-time under the same roof. But "same household" could also reasonably read to encompass members of a legally

---

[3] Contra proferentem does not apply when the insured is a "sophisticated policyholder." (*See Century Indemnity*, 2022 NY Slip Op 50388 [U] at *11-12, citing *Westchester Fire Ins. co. v MCI Communications Corp.*, 74 AD3d 551, 551 [1st Dept 2010]). Here, though, Ms. Eckart is an individual, rather than a sophisticated corporate policyholder. The court thus applies contra proferentem in Ms. Eckart's favor. (*See Matter of Mostow v State Farm Ins. Cos.*, 88 NY2d 321, 326 [1996] [construing ambiguous policy language in favor of an individual policyholder injured in an automobile collision].)

4

[* 4]

recognized union—such as married-but-separated spouses—with some degree of physical contact and financial interdependence. And, as discussed above, "resident" is not necessarily limited to living in a particular premises, or with a particular person, seven days a week. Construing this term against the insurer, the court concludes that married-but-separated spouses can be in the "same household" for policy purposes, and they can qualify as "resident[s] of the same household" without necessarily living together full-time.

### B. Applying the Proper Interpretation of the Policy to the Facts Here

#### 1. Whether Ms. Eckart uses Tanners Neck Lane as her "Residence Premises"

The court now considers the parties' evidence about whether Ms. Eckart uses Tanners Neck Lane as her "residence premises," as construed above. Plaintiff submits a transcript of a phone call between an insurance agent and Ms. Eckart.[4] (NYSCEF No. 23.) During the transcript Ms. Eckart states that she "lives" at a different address from Tanners Neck Lane and that Mr. Eckart "resides" at Tanners Neck Lane. (NYSCEF No. 23.) Yet over the course of the transcribed call, the agent does not attempt to clarify what Ms. Eckart means by "lives" and "resides"—whether, for example, Ms. Eckart is saying merely that she does not use (and has not used) Tanners Neck Lane as a primary residence, or whether she is saying instead that she has never spent time or stayed overnight at that premises at all. (*Cf. MIC Gen. Ins. Corp. v Cunningham*, 2024 WL 3569347, at *2, *4 [Sup Ct, NY County July 29, 2024] [granting summary judgment to plaintiff when the policyholder affirmatively stated that she had *never* resided at the insured premises].)

In opposition, defendants submit the transcript of deposition testimony given by Pacheco-Sanchez in which she stated that she saw Mr. Eckart had told her several times that the premises and its contents belonged to Ms. Eckart; that she regularly saw Ms. Eckart's car at the premises, including at least once overnight; and that Mr. Eckart took precautions against the possibility that Ms. Eckart would come to the premises at the same time as Pacheco-Sanchez and notice the latter's presence there. (*See* NYSCEF No. 31 at Tr. 67-70, 84-88.)

The court concludes that the parties' evidence gives rise to a material dispute of fact about whether Ms. Eckart used Tanners Neck Lane at the relevant times as a "residence premises."

---

[4] Ms. Eckart argues that the call transcript is inadmissible. This court disagrees. Ms. Eckart's statements on the call are admissions for hearsay purposes. And plaintiff has provided (i) an affidavit from its insurance agent attesting to the accuracy of the transcript's substance (*see* NYSCEF No. 14 at ¶¶ 4-5), and (ii) a certification from the stenographer who transcribed the call (*see* NYSCEF No. 23). These representations are sufficient to permit introduction of the transcript in support of plaintiff's summary-judgment motion. (*See Morchik v Trinity School*, 257 AD2d 534, 535-536 [1st Dept 1999].)

5

[* 5]

**2.  Whether Mr. Eckart "Reside[s]" in the "Same Household" as Ms. Eckart**

It is undisputed that at the relevant time, Ms. Eckart and Mr. Eckart were spouses, legally speaking, their separation notwithstanding. It is also undisputed that Mr. Eckart was residing at Tanners Neck Lane. As discussed above, the record does not, however, definitively establish the amount of contact between Ms. Eckart and Mr. Eckart at the time (nor their financial arrangements). Material questions of fact thus remain about whether they were part of the "same household" for coverage purposes.

Accordingly, it is

ORDERED that Ms. Eckart's motion to vacate this court's order entered on January 9, 2024, is granted, and the order is vacated; and it is further

ORDERED that upon vacatur, plaintiff's summary-judgment motion is denied; and it is further

ORDERED that defendant Kathryn Eckart shall serve a copy of this order with notice of its entry on all parties; on the office of the General Clerk (by the means set forth in the court's e-filing protocol, available on the e-filing page of the court's website, https://ww2.nycourts.gov/courts/1jd/supctmanh/E-Filing.shtml), which is directed to update its records accordingly and restore this action to active status; and on the office of the County Clerk (by the same means), which is directed to update its records accordingly.

HON. GERALD LEBOVITS
J.S.C.

**7/31/2024**
**DATE**

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

6

[* 6]